## Commonwealth v. Sanshuck et al.

*E. W. Arthur*, for prosecutor.
*Libson & Olbum*, for defendants.

LENCHER, J., March 3, 1941.—Each of the defendants in the respective proceedings above entitled and numbered was found guilty of the violation contained in section 942 of The Penal Code of June 24, 1939, P. L. 872. The provision is as follows:

"Whoever wantonly or cruelly illtreats, overloads, beats or otherwise abuses any animal . . . shall, upon conviction thereof in a summary proceeding, be sentenced for the first offense to pay a fine of not more than twenty dollars ($20.00), and for the second and every subsequent offense, a fine not exceeding fifty dollars ($50.00), to be paid to any regular incorporated society for the prevention of cruelty to animals, bringing the prosecution. . . ."

Each defendant was given leave to appeal to our court after the justice imposed a fine of $50 on each, on the theory that there had been a previous conviction of the particular offense against each. No official record of a prior conviction was offered, and defendants denied any previous trial. A witness for the prosecution declared it his recollection that each had pleaded guilty before to a similar charge, but counsel for the prosecution was willing to go on the theory that it was the first offense, the punishment to be a fine of not more than $20, if defendants were convicted.

An agent of the humane society waited at the doorway or outside of the poultry store of each of the defendants while the agent's wife and daughter dealt with each defendant under pretense of purchasing a live duck. Just as the duck was placed on the scales with locked wings, the agent, Peden, was signaled to make entrance to the store. Also testifying for the Commonwealth were Dr. Clenn and Dr. Barchfeld, both veterinarians. For the purpose of giving expert testimony in the case they had anesthetized a live duck, locked its wings, and conducted a post mortem examination, having taken X-ray pictures before and after the locking of the wings. The wings of the duck which was the subject of their inquiry were locked from five to possibly seven minutes. Both testified to seeing injury to the duck's nervous system, stretching of its ligaments, and possibly even gangrene.

Defendants who had been selling live poultry for years testified that they knew how to perform the act of locking wings skillfully and painlessly; that in neither operation had the whole act of wing locking taken more than a few seconds, possibly three to five seconds, just long enough to enable the weighing of the duck, to insure the absence of any motion on the part of the duck while on the scale, and to eliminate wing flapping. Both defendants insisted that the alternative method of tying the duck's feet frequently broke the legs of the duck or at least bruised them —a consequence not suffered by wing locking.

As against the two veterinarians called by the Commonwealth, defendants called the witness Seebacher, who had been raising ducks by the thousands every year for 20 years, and the witness Auerswald, licensed by the American Poultry Association as a poultry show judge. Both defense experts said that the act of locking duck wings for a period not exceeding five seconds while the ducks were being weighed would cause no injury or suffering to a duck; that they had themselves so handled many, many ducks with no show or sign of pain or injury of any kind. Both insisted that an injured or suffering duck would make outcry, it being conceded that there was no outcry of pain from the duck in either case, and the evidence certainly showed no sign or mark or bruise.

We acquit both defendants here because the prosecution completely failed to show any wicked or cruel or reckless act. We certainly do not intimate that there can never be a conviction under this section. On the other hand, we cannot hold in a penal or criminal prosecution that the mere act of locking wings is always of itself to be considered a violation of the provision. A retail poultry dealer who—within the space of three to five seconds—locks the wings of a duck properly to catch its weight in the honest belief justified by years of experience that this is the simplest, safest, and most expeditious method, is not to be convicted in the absence of testimony of any wanton, wicked, cruel or reckless spirit in connection with the act. There is no remote suggestion of a sadistic or inherently cruel attitude on the part of either of the defendants. There is no denial that the time involved was not deliberately stretched out but expressly confined to the few seconds absolutely necessary. There is nothing in the case to destroy the assumption that both women who are defendants here are people of at least ordinary decency and character. Nothing done by either defendant could of itself shock the sensibilities of people who would shrink from visiting cruelty upon dumb animals.

The circumstances involved in the experiment conducted by the Commonwealth's experts differ so widely from the facts and circumstances of the cases before us that we cannot accept their conclusions as being applicable against either of the defendants here. In and of itself momentary wing locking quickly and expeditiously executed, reasonably necessary in the honest conduct of a retail business, is not a violation of the section indicated. Certainly surrounding facts and circumstances may sometimes make it so. The record in both these cases is bare of any such facts and circumstances.

### Order

And now, March 3, 1941, after hearing, the defendants herein are adjudged not guilty of the offense of cruelty to animals whereof they stand charged.